Arthur Brookfield v. Commissioner.
Brookfield v. Commissioner
Docket No. 51372.
United States Tax Court
T.C. Memo 1956-56; 1956 Tax Ct. Memo LEXIS 238; 15 T.C.M. (CCH) 247; T.C.M. (RIA) 56056; March 12, 1956
George L. Ginger, Esq., 16210 Cherrylawn Avenue, Detroit, Mich., for the petitioner. Robert J. Fetterman, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of petitioner as follows: Year
Deficiency
1949
$1,985.53
1950
2,560.18
Issues raised by the pleadings and not disposed of by stipulation are the correctness of the respondent's action in disallowing the following deductions taken by petitioner in *239 his returns for 1949 and 1950: 1949
1950
(1) Customer entertainment
$2,466.05
$2,937.47
(2) Contributions
1,346.50
1,430.00
(3) Taxes
447.07
(4) Automobile depreciation and expenses
1,048.35
1,160.00
(5) Club dues
381.41
757.14
(6) Investment counsel and legal counsel
215.00
275.00
(7) Sales and promotional magazines
65.00
General Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner, Arthur Brookfield, filed his Federal income tax returns for 1949 and 1950 with the collector for the district of Michigan at Detroit, Michigan. Petitioner was employed as District Sales Manager in the Detroit area by Vanadium Alloys Steel Co. during 1949 and 1950. Issue 1. Deductions for Customer Entertainment Findings of Fact In his return for 1949, petitioner reported $20,828.26 as total wages received from his employer, Vanadium Alloys Steel Co., and deducted therefrom $8,558.48 in computing adjusted gross income. In a schedule attached to the return, the deduction of $8,558.48 was explained as follows: Travel expenses
$1,426.34
Meals, lodging, cost of transporting
baggage, tips, etc.
1,295.20
Entertainment of customers and pros-
pective accounts, good will, gifts not
reimbursed by employer; yet pro-
ductive of business income
5,836.94
Total
$8,558.48
*240 During 1949, petitioner spent $6,092.43 for travel, meals, lodging, automobile mileage and expense, entertainment of customers, gifts, cigars, etc., for which he was reimbursed in full by his employer, Vanadium Alloys Steel Co. The total wages of $20,828.26 reported by petitioner included the total reimbursements of $6,092.43 received by him. The Commissioner allowed the deduction of $6,092.43 of the $8,558.48 taken by petitioner, but disallowed the balance, or $2,466.05, spent for the entertainment of customers and prospective accounts which he did not submit to his employer for reimbursement. Similarly, petitioner spent $6,078.39 during 1950 for travel, meals, lodging, automobile expenses, entertainment of customers and prospective accounts, gifts and other expenses connected with his employment for which he was reimbursed in full by his employer. The total wages of $15,485.08 reported by petitioner on page 1 of his return for 1950, included the $6,078.39 received as reimbursement. The Commissioner allowed the deduction of $6,078.39 but disallowed the deduction of the $2,937.47 taken by petitioner as "customer entertainment not reimbursed." The arrangement between petitioner *241 and his employer was quite indefinite, and petitioner absorbed expenditures for the entertainment of customers himself when he believed that to submit them to his employer for reimbursement would subject him to criticism. It had been petitioner's practice for several years to charge such expenses to his own account when he felt they were higher than Vanadium Alloys Steel Co. would be willing to absorb. Opinion To be entitled to a deduction for the amounts in controversy as business expenses, it was incumbent upon petitioner to establish that such amounts were paid during the taxable year, that they were ordinary and necessary expenses, and that they were connected with the carrying on of his trade or business. Section 22(n) and section 23(a)(1), Internal Revenue Code of 1939; Louis Boehm, 35 B.T.A. 1106. The record does not show that petitioner was other than an employee of Vanadium Alloys Steel Co. during the years in issue, or that he was required by his employer to make expenditures for the entertainment of customers in excess of the amount for which he received reimbursement. The petitioner testified that the expenditure of the amounts of $2,466.05 and $2,937.47 *242 for customer entertainment during 1949 and 1950, respectively, helped his "profit-sharing plan with the company" (not otherwise described in the record). In the absence of evidence showing that petitioner received income under the foregoing "profit-sharing plan" during the years in issue, we cannot conclude that the expenses here in question were ordinary and necessary expenses incurred in connection with any trade or business carried on by petitioner. From this record it is necessary to conclude that petitioner's income was entirely from wages and not from commissions or a profitsharing arrangement with his employer. The petitioner has failed to meet his burden of proof and respondent's action in disallowing the deductions claimed for customer entertainment in 1949 and 1950 must be sustained. Issue 2. Contributions Findings of Fact In his return for 1949, petitioner took a deduction in the amount of $1,646.50 for charitable contributions. This deduction was explained in the return as consisting of the following: Church - $546, Mission (church) - $225, Red Cross - $81, Salvation Army - $100, Infantile (March of Dimes) - $162.50, Goodfellows - $100, Protestant Children's Home *243 - $200, Baptist Children's Home - $100, "V.F.W. & Relief" - $127, "Cancer and T.B." - $75, and "Other approved and organized charities" - $230. The correct total of the foregoing amounts is $1,946.50, whereas petitioner showed the total as $1,646.50 in his return. The respondent disallowed the foregoing deduction in full, among the other items disallowed, and in lieu of all deductions allowed petitioner the standard deduction of $1,000. In 1949 the petitioner contributed $200 to the Protestant Children's Home, $100 to the Baptist Children's Home and $31 to the Red Cross. The deduction taken in 1950 for contributions was explained as consisting of the following: Baptist Church - $1,430, Red Cross - $25, Goodfellows - $40, Salvation Army - $20, Infantile Fund - $20, Children - $200, Handicap - $2, Starr Comm. - $10, Shrine Hospital - $5, Baptist Children's Home - $100, and Other - $30. The respondent disallowed the foregoing deductions in full and in lieu thereof the standard deduction of $1,000 was allowed. The deduction for contributions claimed for 1950 was agreed to at the hearing with the exception of the item described as "Baptist Church - $1,430." The petitioner contributed *244 $445 by check to the Covenant Baptist Church during 1950. Opinion Petitioner testified that most of his contributions during 1949 were by cash and that he kept a record of such contributions in a notebook. However, this notebook was not put in evidence. Petitioner testified that it was his practice to contribute to charitable organizations from time to time whenever an appeal for donations was made and that the church contributions were placed in the collection plate during services. We have found as a fact that during 1949 petitioner contributed $200 to the Protestant Children's Home, $100 to the Baptist Children's Home and $31 to the Red Cross. Although no evidence appears in the record as to the dates or amounts of many of the remaining contributions for which a deduction was taken, petitioner's testimony indicates that some amount was paid to each of the specific donees listed. Accordingly, applying the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, we have found that the petitioner made contributions as follows: Church - $200, Mission (church) - $75, Salvation Army - $50, Infantile (March of Dimes) - $65, Goodfellows - $40, V.F.W. & Relief - $40, Cancer and *245 T.B. - $15. The record as to the item designated "Other approved and organized charities" is so vague and indefinite that we are unable to determine whether that item or any portion of it represented a contribution to a charitable or other organization within the meaning of section 23(o) of the 1939 Code. Therefore, we sustain the respondent's action in disallowing in full the amount of this item. The sole item of contributions for 1950 in issue is the item listed "Baptist Church - $1,430". The parties have stipulated that $445 was paid by check to the Covenant Baptist Church in 1950, leaving $985 in dispute. Petitioner claims to have placed that amount of cash in the collection plate during the regular Sunday services. Since this claimed donation is without corroborative evidence, we think it reasonable to allow petitioner a deduction for his cash gift in the amount of $300 under the principle of Cohan v. Commissioner, supra.
Issue 3. Taxes Findings of Fact The deduction taken for taxes paid during 1949 in the amount of $447.07 was explained in the return as follows: "New car purchase sales tax" - $100.69, "Michigan sales tax" - $248.18, "Car license plates *246 (3 sets)" - $40.20, and "Gasoline and oil, personal use" - $58. The respondent disallowed the deduction in full. Since the petitioner was unmarried, the primary items that he purchased and upon which he paid sales tax were his food and clothing. A 3 per cent sales and use tax was in effect in Michigan in 1949. The petitioner owned at least one automobile throughout the entire year. He took a long automobile trip from Detroit to the West Coast during 1949. Petitioner paid $100.69 in state sales tax on the purchase of a new Cadillac in 1949. During 1950 petitioner paid $214.02 for taxes and deducted this amount on his return for that year. Opinion Petitioner listed on page 3 of his return deductions for taxes amounting to $447.07 for 1949 and $214.02 for 1950. He contends that the items comprising the $447.07 for 1949 were: New car purchase sales tax
$100.69
Sales tax
248.18
License plates (3 sets)
40.20
Gas and oil, personal use
58.00
Total
$447.07
With respect to the amount of $248.18 deducted as sales tax, the petitioner testified that this amount was an estimate. Since the Michigan sales tax was only 3 per cent on such items as to which it applied *247 and since the petitioner's estimate equals $248.18, or approximately 3 per cent of his reported net taxable income, it is apparent that in arriving at his estimate the petitioner has computed sales tax on items not subject to such tax. The petitioner was unmarried and the primary items upon which he paid sales tax were his food and clothing. Applying the principle of Cohan v. Commissioner, supra, it is our conclusion that a reasonable deduction for sales taxes paid during 1949, exclusive of the sales tax on his purchase of an automobile, would be $100. The petitioner has no record of the amount of gasoline tax paid in 1949 and has furnished no evidence as to the total mileage driven nor as to the amount of gasoline purchased during 1949. On the basis of the meager evidence bearing on the question, and applying the principle of Cohan v. Commissioner, supra, we have determined that petitioner paid gasoline tax in the amount of $30 in 1949. Petitioner spent $40.20 for 3 sets of automobile license plates in 1949. The cost of license tags normally is deductible under section 23(c) of the 1939 Code. This item, however, was included in petitioner's total actual *248 automobile expenses for 1949 which amounted to $600.79. He received reimbursement for automobile expenses from his employer in the amount of $1,565.11, for which he was allowed a deduction from gross income. To permit deduction of this item a second time, on page 3 of this return, clearly would result in a double deduction. Consequently, we are of the opinion that the respondent's action in disallowing the deduction of the cost of the license plates purchased in 1949 is correct. We have found as a fact that petitioner paid $100.69 in state sales tax upon purchase of a Cadillac in 1949. The parties have agreed that petitioner should be allowed a deduction of $214.02 for taxes paid in 1950. Issue 4. Automobile Depreciation and Expenses Findings of Fact In his return for 1949 petitioner took a deduction for automobile depreciation in the amount of $790.59, consisting of $303.09 for a Cadillac sedan purchased in 1947 and sold in June 1949, and $487.50 for a Cadillac sedan purchased in June 1949. The amount of $487.50 was computed on the basis of a period of one-half year, 100 per cent business use and a useful life of 4 years. Petitioner also deducted $49.70 for automobile storage, *249 $95.06 for repairs and $113 for car insurance and accessories. The respondent disallowed the foregoing deductions in full. Petitioner's automobile expense book for 1949 shows actual automobile expenses amounting to $600.79. Petitioner was reimbursed by his employer for automobile expenses for 1949 as follows: Mileage:
18,937 miles at $.08 per mile
$1,514.96
Parking, storage, tunnel
50.15
Total
$1,565.11
Petitioner purchased a Cadillac sedan on October 18, 1950. In his return for 1950 he claimed a full year's depreciation for the car on the basis of 100 per cent business use and a useful life of 4 years. The cost of the car was $3,829.50 and the depreciation taken was $883, or $958 reduced by $75, reflecting gain on the sale in 1950 of the Cadillac acquired in 1949. Petitioner also took depreciation on a Ford sedan acquired in 1950 on the basis of a period of one year and 50 per cent business use. The cost of the Ford was $2,223 and the amount of depreciation taken was $277. The total depreciation taken for 1950, in the amount of $1,160, was disallowed in full by the respondent. A record of automobile expenses was kept by petitioner in his automobile *250 expense book for 1950 for the months of January through May and November and December. No entries appear in the book for the months of June through October. The total automobile expenses listed in the 1950 expense book are: January
$ 33.53
February
34.65
March
51.30
April
15.75
May
34.59
November
76.73
December
42.16
Total
$288.71
Petitioner was reimbursed by his employer for automobile expenses for 1950 as follows: Mileage: $.08 per mile
January through May 6,868 miles
$ 549.44
November and December, 3,274 miles
261.92
Gas, oil, lubrication, June through Oct.
172.54
Parking, storage, tunnel
72.85
Total
$1,056.75
Opinion The petitioner claimed the following deductions in his return for 1949 pertaining to automobile expenses: Depreciation
$ 790.59
Storage
49.70
Repairs
95.06
Car insurance and accessories
113.00
Total
$1,048.35
The items listed, to be deductible, must qualify as ordinary and necessary business expenses under section 23(a) of the 1939 Code. The petitioner's automobile expense book, which he testified contained all of his automobile expenses for both business and personal use, shows *251 a total of $600.79 as having been spent by him for the operation of his automobile during 1949. He received payment in the amount of $1,565.11 from his employer for 1949 automobile expenses which consisted of $1,514.96 for mileage and $50.15 for storage, parking and tunnel. The $1,565.11 is part of the total amount of $6,092.43 which petitioner received from his employer as reimbursement for business expenses and for which he was allowed a deduction from gross income. Substantially all of the $95.06 claimed in the return for automobile repairs is included in the total automobile expenses for 1949 in the amount of $600.79. This amount therefore should not be considered in determining whether petitioner incurred any out-of-pocket expenses for business use of his automobiles in excess of the reimbursement received. Assuming that the allowable depreciation for automobiles used for business purposes for 1949 is $790.59, as listed in the return, and that the petitioner spent $49.70 for storage and $113 for insurance and accessories for automobiles used by him for business purposes, the total of all these amounts which are claimed as expenses for 1949 plus the total actual expenses in *252 the amount of $600.79 for both business and personal use is $1,554.08. As previously mentioned, he received from his employer a total of $1,565.11 as reimbursement for the cost of the business use of his automobiles during 1949. Therefore, he was reimbursed in full by his employer for all of the claimed expenses and was permitted to deduct the reimbursed amount from gross income pursuant to sections 22(n) and 23 of the 1939 Code. To again permit a deduction of the expenses listed would result in the allowance of a double deduction for each item claimed. Amounts deducted under one section of the Internal Revenue Code cannot again be deducted under another provision thereof. Regulations 111, section 29.23(a)-1. In his return for 1950, petitioner deducted a full year's depreciation for a Cadillac sedan purchased on October 18, 1950, on the basis of 100 per cent business use and a useful life of 4 years. The cost of the car was stated at $3,829.50 and depreciation was taken in the amount of $883. In addition, petitioner took depreciation in the amount of $277, representing a full year's depreciation on a Ford sedan acquired in 1950, computed on the basis of 50 per cent business use. *253 Total depreciation taken for 1950 was $1,160. It is at once apparent that petitioner is not entitled to deduct a full year's depreciation in 1950 for a Cadillac automobile purchased on October 18 of that year. The maximum period for which depreciation would be allowable is approximately 2 1/2 months. If computed for this period on the basis of the cost and useful life used by petitioner, the allowable depreciation on the Cadillac would not exceed $200. Thus, using the figures and method of computation shown in the depreciation schedule in petitioner's return for 1950, except as corrected above, the total depreciation for both the Ford and the Cadillac did not exceed $477. The automobile expense book for 1950 which shows all automobile expenses for both business and personal use contains entries for only the months of January through May and November and December. The expenses listed for such months total $288.71. However, petitioner received reimbursement for automobile expenses from his employer on a mileage basis for such months in the amount of $811.36. For the remainder of that year, the months of June through October, he was reimbursed for his actual out-of-pocket automobile *254 expenses. Petitioner therefore received from his employer the difference between $811.36 and $288.71, or $522.65 in excess of his actual automobile expenses for 1950. This excess amount was more than adequate to reimburse petitioner for depreciation of $477 on his two automobiles in 1950. Inasmuch as petitioner was permitted to deduct from gross income the total amount received from his employer as reimbursement on a mileage basis of $811.36 for the months of January through May, November and December, together with the amount received for his out-of-pocket expenses during the remainder of 1950, the allowance of any part of the depreciation claimed on the return would result in a double deduction for depreciation. Consequently, the respondent's action in disallowing the depreciation deducted is sustained. Issue 5. Club Dues Findings of Fact The petitioner claimed a deduction for club dues in his return for 1949 in the amount of $381.41, and in his return for 1950 in the amount of $757.14, both of which were disallowed by the respondent. Petitioner paid the Red Run Golf Club $429.69 in 1949 and $729.61 in 1950. The monthly dues and Federal tax amounted to $25 and $5, respectively. *255 Petitioner joined the Red Run Golf Club for business reasons and a portion of the expenditures made to the club during 1949 and 1950 were made for the purpose of promoting sales contacts. The payments made to the club, however, included the cost of petitioner's own meals and entertainment as well as golf and incidental expenditures. Opinion The petitioner took deductions of $381.41 and $757.14 for club dues in his returns for 1949 and 1950, respectively. The parties have stipulated that petitioner paid the Red Run Golf Club $429.69 in 1949 and $727.61 in 1950. Substantial evidence that the dues are both ordinary and necessary expenses of carrying on a trade or business has always been made a prerequisite for the deduction of club dues. George K. Gann, 41 B.T.A. 388; Louis Boehm, supra.For the reasons heretofore set forth under Issue 1, supra, in connection with entertainment expenses, we conclude that petitioner has failed to prove that any part of the amounts paid to his golf club were attributable to the conduct of a trade or business in which he was engaged. We therefore decline to disturb the respondent's disallowance of the deductions taken for *256 club dues in 1949 and 1950. Issue 6. Investment Counsel and Legal Counsel Findings of Fact In his return for 1949 petitioner deducted $215 for "Investment Counsel and American Society of Engineers." Petitioner deducted $400 for legal counsel in his return for 1950. Each of the foregoing deductions was disallowed by the respondent. In connection with the deduction for legal counsel in the amount of $400 taken in petitioner's return for 1950, petitioner paid $125 of this amount by check and paid the remainder in cash. The $400 fee was paid for advice and assistance in connection with Federal income tax matters. Opinion Petitioner took a deduction in the amount of $215 for "Investment Counsel and American Society of Engineers" in his return for 1949. Since petitioner has submitted no evidence with respect to this item, the respondent's action in disallowing the deduction is sustained. Petitioner took a deduction in the amount of $400 for legal counsel in his return for 1950. The parties stipulated at the hearing that a check in the amount of $125 was made in payment of legal fees. The respondent on brief agrees that petitioner is entitled to a deduction for legal counsel *257 to the extent of $125. The remaining $275 is in issue. The petitioner testified that he paid an additional $275 to his attorney for advice and assistance on Federal income tax matters. We are persuaded from the evidence that petitioner in fact paid the $275 to his counsel for such advice and assistance and is therefore entitled to a deduction for the full amount claimed. Herbert Marshall, 5 T.C. 1032; Philip D. Armour, 6 T.C. 359
Issue 7. Sales and Promotional Magazines Findings of Fact Petitioner deducted $65 for business journals and magazines in his return for 1949, which was disallowed in full by the respondent. The publications were technical in nature and were related to the steel industry, in which petitioner was employed. The subscription payments were paid in cash to solicitors who called on petitioner in his office. Opinion In connection with the deduction of $65 for "Business journals and magazines" claimed in his return for 1949, petitioner testified that the publications were technical in nature and that he believed they were necessary in connection with his duties as sales manager. The respondent has raised no issue with respect to *258 this deduction except that he contends petitioner has not substantiated such payment. We find however that petitioner has incurred such expense, the exact amount of which cannot be determined from the record. In the absence of proof as to the exact amount spent by petitioner for such publications, on the basis of Cohan v. Commissioner, supra, we believe that a reasonable amount representing the cost of sales and technical magazines during 1949 would amount to $25. Decision will be entered under Rule 50.